Alan R. Schmidt, Kirkwood, for appellant.

James R. Keller, St. Louis, Irving L. Cooper, Margaret E. Gangle-Casinger, Clayton, for respondents.

SMITH, Judge.

Plaintiff Highway Commission appeals from the order of the trial court dismissing its condemnation action as to four parcels of real estate in St. Louis County. The basis of the trial court action was the failure of the Commission to establish the jurisdictional requirement of condemnation that it was unable to agree with the condemnee on compensation for the property to be taken. See *City of Cape Girardeau v. Robertson*, 615 S.W.2d 526 (Mo.App. 1981) [2, 3]; *State ex rel. State Highway Commission v. Pinkley*, 474 S.W.2d 46 (Mo.App.1971) [2]. We affirm.

In *State ex rel. Weatherby Advertising Co., Inc. v. Conley*, 527 S.W.2d 334 (Mo. banc 1975) the court set forth five conditions precedent to jurisdiction of circuit courts to proceed with petitions for condemnation. That case involved highway construction where federal funds were involved and imposed the five conditions on the basis of federal guidelines contained in 42 U.S.C. § 4561. The record is not clear here whether federal funds are involved, although one exhibit would warrant an inference that they are. Regardless, both

STATE of Missouri, ex rel., MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Appellant,

v.

Robert A. BLACK, et al., Respondents.

No. 49694.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 24, 1985.

plaintiff and defendants rely upon the *Weatherby* case and acknowledge its applicability. Defendants have challenged the Commission's compliance with several of the *Weatherby* conditions. We need deal only with one, that which requires the Commission to make "an offer of the just compensation so established to the owner." That same requirement has been recognized by Missouri courts prior to *Weatherby, State ex rel. State Highway Commission v. Pinkley, supra,* and where the condemnation is local not involving federal funds, *City of Cape Girardeau v. Robertson, supra.*

The Commission, through its negotiator, tendered to each of the landowners here a letter from the District Engineer. That letter stated:

"I am authorized by the Highway and Transportation Commission and on behalf of the Highway and Transportation Commission hereby offer all interested parties who may have an interest in the real estate to be acquired the sum of $ *(each letter contained a different figure)* which has been estimated to be just compensation for such property and rights based upon the fair market value of the property ... It is requested that you, within a reasonable time, advise the Highway and Transportation Commission's representative or the undersigned of your acceptance or rejection of this offer."

The letter contained no legal description of the property to be taken, and no description of the temporary construction easements sought. It did refer to a project number and parcel number. In view of these omissions and other provisions normally found in a sale contract it is at least questionable that the letter contained an offer sufficiently definite to constitute a contract upon acceptance by the landowner. We need not reach that point.

At the time of delivery of the letter the negotiator also tendered to each landowner an "Option-Escrow Agreement" and "General Warranty Deed" by which to accept the "offer." The Option-Escrow Agreement provided that in consideration of "$1.00 and other good and valuable considerations" the landowner grants to the Commission "the exclusive option, right and privilege of purchasing the above described property on or before the *(left blank)* 19__ at a total purchase price of *(Amount contained in "offer" letter)*." [1] The general warranty deed included within its legal description both land to be permanently taken and that over which temporary easements were sought.

"An option is only a continuing offer whereby the owner of land agrees with another that the latter shall have the privilege of buying the land upon certain terms, within a specified time. No obligation is imposed upon the optionee to buy the land." *State ex rel. State Highway Commission v. Howald,* 315 S.W.2d 786 (Mo.1958) [9–11].

Tender of an option to the landowner by the Commission was simply an offer to make an offer and no contract could exist until the optionee exercised the option by some unspecified date. It did have the effect, however, of precluding, or at least limiting, alienation of the optioned property during the pendency of the option. In a condemnation case an option is closely analagous to the "offer-to-buy-conditioned-upon-my-approval-of-my-own offer" found wanting in *State ex rel. State Highway Commission v. Pinkley, supra* [3]. As stated in that case "since the burden of proving the inability of the parties to agree is on the condemnor, the cases indicate that it is customary, if not mandatory, for the condemnor to initiate the negotiations and to make the first offer or proposal." [2] The manner of acceptance of the Commission's letter "offer" was the execution by the landowner of his own offer in option form for acceptance by the Commission. There was not an acceptable offer under the law. *Weatherby, supra; Pinkley, supra; Robertson, supra; Michigan Cent.*

---

1. As to one landowner the price was left blank. The negotiator testified this was because the parties were negotiating the possibility of a swap of land.

*R. Co. v. Ferguson,* 162 Mich. 220, 127 N.W. 320 (1910); *New York State Electric & Gas Corp. v. Morrison,* 44 Misc.2d 145, 252 N.Y.S.2d 979 (Sup.Ct.1964).

Judgment affirmed.

SNYDER, J., and CARL R. GAERTNER, P.J., concur.